# EXHIBIT 1

UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

| | |
|---|---|
| DAVID A. GEHLBACH AND TIMOTHY S. FLANAGAN, <br><br> PLAINTIFFS, <br><br> V. <br><br> GIFFORD MEDICAL CENTER, INC., <br><br> DEFENDANT. | Case No. 2:23-cv-00066-cr |

# FLSA SETTLEMEMT AGREEMENT AND RELEASE

      This FLSA Settlement Agreement ("FLSA Settlement Agreement") is entered into between Plaintiffs David A. Gehlbach and Timothy S. Flanagan ("Plaintiffs") and Defendant Gifford Medical Center, Inc. and Gifford Health Care, Inc. (together, "Defendant") (collectively, "the Parties.").

      WHEREAS, Plaintiffs have filed a Complaint in the United States District Court for the District of Vermont, Case No. 2:23-cv-00066-cr, in which Plaintiffs allege violations of the FLSA, in addition to other, state-law claims not covered by the FLSA (the "Action");

      WHEREAS, the matters alleged in Plaintiffs' Complaint raise *bona fide* disputes regarding the rate of pay and overtime applicable to Plaintiffs' claims under the FLSA, along with other factual and legal disputes, which remain unresolved;

      WHEREAS, the parties have conducted discovery in this matter, and have independently performed assessments of potential damages, in an attempt to resolve this matter;

      WHEREAS, the parties have agreed that in or about December 2022, Plaintiffs received payments representing the amount of back wages that would have been due to them under the FLSA for the two-year period covered by their claims, had they prevailed on such claims, in amounts equal to the amounts reflected in paragraphs 1a and 1b below;

      WHEREAS, the Parties desire to resolve and settle, fully and finally, Plaintiffs' FLSA claims, and have entered into a separate Settlement Agreement and General Release ("Non-FLSA Settlement Agreement"), resolving all other potentials claims asserted by Plaintiffs;

      WHEREAS, the Parties, each represented by experienced and able counsel, have chosen to avoid the burden, expense and uncertainty of continuing with further litigation in this matter, and have therefore chosen to enter into a fair and reasonable compromise and resolution of all FLSA claims raised in Plaintiffs' Complaint, without admitting or conceding any liability or damages whatsoever;

1

NOW, THEREFORE, in consideration of the mutual promises herein contained, and for good and valuable consideration, the receipt, sufficiency and adequacy of which are hereby acknowledged, the Parties to this FLSA Settlement Agreement agree as follows:

1. Defendant agrees to pay Plaintiffs a total sum of $85,409.00 (the "Settlement Payments") in full and complete settlement of all of Plaintiffs' FLSA claims, including Plaintiffs' claims for attorneys' fees and costs associated with those claims, against Defendant. The Settlement Payments will be divided as follows:

    a. A payment of $37,779.47 in settlement of Plaintiff Gehlbach's claims for liquidated damages, made by check payable to Plaintiff Gehlbach, and delivered to Plaintiff's counsel (Defendant will issue a 1099 for the payment referenced in this subparagraph); and

    b. A payment of $14,296.53 in settlement of Plaintiff Flanagan's claims for liquidated damages, made by check payable to Plaintiff Flanagan from Defendant, and delivered to Plaintiff's counsel (Defendant will issue a 1099 for the payment referenced in this subparagraph); and

    c. A payment of $33,333 in settlement of Plaintiffs' claim for attorney fees and costs to Plaintiffs' attorney, Steven P. Robinson, Esq., made by check payable to Plaintiffs' attorney, and delivered to Plaintiff's counsel (Defendant will issue a 1099 for the payment referenced in this subparagraph).

2. All checks referred to in Paragraph 2 above shall be sent to:

    Steven P. Robinson, Esquire
    Diamond & Robinson, P.C.
    P.O. Box 1460
    Montpelier, VT 05601-1460
    (802) 223-61664

3. Plaintiffs acknowledge and agree that they have already received payments representing the amount of back wages that would have been due to them under the FLSA for the two-year period covered by their claims, had they prevailed on such claims. For that reason, and in recognition of such payments, Plaintiffs agree that the amounts reflected in paragraphs 1a and 1b above, representing liquidated damages, will fully satisfy any remaining outstanding claims Plaintiffs may have against Gifford under the FLSA

4. Plaintiffs understand and agree, for themselves, their heirs, executors, administrators, and representatives, that the Settlement Payments set forth in Paragraph 1 are in full and complete satisfaction of, and that Plaintiffs completely release all wage, hour, and/or overtime claims that Plaintiffs have asserted, could assert, or could have asserted against Gifford Medical Center, Inc., Gifford Health Care, and its affiliates, parents, subsidiaries, predecessors, successors, assigns, directors, trustees, officers, insurers, employees, and agents, under any theory including the FLSA, or which arise from or relate to any such claims under the FLSA, for any period during Plaintiffs' employment with Defendant up through the date of the full execution of this Agreement.

5. The Settlement Payments set forth in Paragraph 1 are expressly contingent upon (a) the Court's final approval of the terms of the Parties' FLSA Settlement, (b) compliance with filing the Stipulation of Dismissal and (c) the receipt, by Defendants' legal counsel, of fully completed and executed W9 forms from Plaintiffs, and a fully completed and executed W9 form from Diamond & Robinson, P.C. The Settlement Payments provided for in Paragraph 1 above will be shall be made within 45 days of the Court's final order dismissing with prejudice all claims set forth in Plaintiff's Complaint.

6. Plaintiffs shall assume all responsibility for, and shall indemnify Defendant and hold Defendant harmless against and from any and all claims, losses, damages, liability, suits, actions, judgments, costs, demands, deficiencies, levies, assessments, executions, interest, penalties, and expenses, resulting from any liability or claim of liability for their failure to pay amounts assessed or found to be due to any federal or state government or agency thereof, and including but not limited to federal and state income and social security taxes, resulting from the treatment of the payments, conditions, and considerations provided by Defendant, in the manner set forth in this Agreement.

7. The Parties acknowledge that none of them is a "prevailing party" in this matter, and that this FLSA Settlement Agreement is not intended, and will not be construed, as an admission of wrongdoing or liability on the part of any Party.

8. Within three calendar days following execution of this Agreement by all Parties, the Parties will file a Joint Motion with the Court, to approve this FLSA Settlement Agreement.

9. Within three calendar days following the Court's approval of the FLSA Settlement Agreement, the Parties shall file a Stipulated Notice of Dismissal with Prejudice in Case No. 2:23-cv-00066-cr, as to all claims set forth in the Complaint.

10. Plaintiffs represent and acknowledge that they: (1) have consulted with their attorney prior to executing the FLSA Settlement Agreement; (2) have been represented by counsel in the negotiation of the FLSA Settlement Agreement; (3) have carefully read and fully understand all of the terms of the FLSA Settlement Agreement; (4) have had reasonable time and opportunity to consider the FLSA Settlement Agreement; and (5) have voluntarily entered into the FLSA Settlement Agreement.

11. The Parties acknowledge that in agreeing to this FLSA Settlement Agreement, they have not relied in any way upon representations or statements of any other party other than those representations or statements set forth in this FLSA Settlement Agreement.

12. Plaintiffs expressly agree to refrain from disparaging, defaming, or criticizing Defendant with respect to any pay practices or policies relevant to time periods not covered by this agreement, including, without limitation, making any statement, oral or written, which portrays the Defendant, its affiliates, officers, agents, representatives and/or management employees in an unfavorable light or subjects any thereof to scorn, obloquy or ridicule, with respect to any pay practices or policies occurring prior to December 2020.

13. The language of all parts of the FLSA Settlement Agreement shall in all cases be construed as a whole, according to its fair meaning, and not strictly for or against any of the Parties. The FLSA Settlement Agreement has been negotiated by and between

attorneys for the Parties and shall not be construed against the "drafter" of the FLSA Settlement Agreement. If any portion or provision of the FLSA Settlement Agreement (including, without implication of limitation, any portion or provision of any section of the FLSA Settlement Agreement) is legally determined to be unenforceable, the remainder of the FLSA Settlement Agreement shall not be affected by such determination and shall be valid and enforceable to the fullest extent permitted by law, and said unenforceable portion or provision shall be deemed not to be a part of the FLSA Settlement Agreement.

14. This FLSA Settlement Agreement may not be modified, altered, or changed except upon express, written consent of all Parties, which includes specific reference to this FLSA Settlement Agreement.

15. The Parties hereby agree to cooperate and cause their respective attorneys to cooperate with each other in connection with filing, modifying, execution, and delivery of all documents necessary to consummate the terms and conditions set forth in this FLSA Settlement Agreement.

16. This FLSA Settlement Agreement is binding upon and inures to the benefit of the Parties and their respective heirs, personal representatives, successors, and assigns. This FLSA Settlement Agreement may be executed in any number of counterparts, each counterpart, when executed, shall have the same effect as if the signature on each such counterpart were upon the same instrument. One or more counterparts of this FLSA Settlement Agreement may be delivered via telecopier, facsimile, or e-mail (as a PDF file), and they shall have the same effect as an original counterpart hereof.

NOW, THEREFORE, the parties have executed this FLSA Settlement Agreement freely and voluntarily, as of the dates set forth below.

02/06/2025

Date

David A. Gehlbach
Plaintiff

02/06/2025

Date

Timothy S. Flanagan
Plaintiff

02/07/2025

Date

Michael Costa
CEO, Gifford Medical Center

23336210.1

23334434.2

4